F.#

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



- - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN
ORDER AUTHORIZING THE RELEASE OF
HISTORICAL CELL-SITE INFORMATION

SEALED APPLICATION

- - - - - - - - - - - - - - - - -X

    Elizabeth Geddes, an Assistant United States Attorney for the Eastern District of New York, hereby applies to the Court for Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days AT&T Wireless (the "service provider") disclose recorded information identifying the base station towers and sectors that received transmissions from 917-743-4591, a telephone issued by the service provider and used by David Vargas, Jr. (the "SUBJECT TELEPHONE"), at the beginning and the end of calls or text message transmissions, and the mobile switching center serving the SUBJECT TELEPHONE during any calls or text message transmissions, for the period from December 15, 2014 to December 16, 2014 (collectively, the "HISTORICAL CELL-SITE INFORMATION").

    In support of this application I state the following:

    1.  I am an Assistant United States Attorney in the Office of Kelly T. Currie, Acting United States Attorney for the Eastern District of New York. As such, I am a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d) and, as such, am authorized to apply for Orders authorizing the disclosure of the HISTORICAL CELL-SITE INFORMATION.

2. The Court is authorized to order the disclosure of the HISTORICAL CELL-SITE INFORMATION upon the government offering specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. 18 U.S.C. § 2703(d).

3. I have discussed this matter with a Special Agent with the Drug Enforcement Administration (the "investigative agency"), who is involved in the investigation. Based upon my discussion with the agent, I believe that the information likely to be obtained is relevant to an ongoing criminal investigation as required by 18 U.S.C. § 2703(d). First, the investigative agency is conducting a criminal investigation into possible violations of federal criminal laws, including narcotics offenses, in violation of 21 U.S.C. §§ 841, 843 and 846, occurring in the Eastern District of New York and elsewhere. Second, it is believed that David Vargas, Jr., and others known and unknown, have used the SUBJECT TELEPHONE in furtherance of the above offenses. Third, the HISTORICAL CELL-SITE INFORMATION will further the investigation by corroborating the observations of surveillance agents and by providing leads as to subjects' residences and meetings and the location of evidence.

4. Based upon discussions with a special agent of the investigative agency, the government hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation.

    a. On or about December 9, 2014, DEA agents provided a cooperating witness (the "CW") with a recording device in anticipation of the CW's planned

meeting with David Vargas, Jr., ("Vargas") and searched the CW for contraband with negative results.[1]

    b. Thereafter, the CW, who was equipped with the recording device, met with Vargas at Harold's New York Deli Restaurant in Edison, New Jersey ("Harold's Restaurant"). During the meeting, Vargas provided the CW with a substance that Vargas represented was cocaine.

    c. Surveillance in the vicinity of Harold's Restaurant in Edison, New Jersey on December 9, 2014 by agents with the DEA revealed the following:

      i. At approximately 11:55 a.m., a dark colored Infiniti with dark tints bearing New Jersey license plate Y67EPU drove up and parked diagonally from the sally port where the CW's vehicle was parked. A Hispanic looking male wearing a hat and dark coat, later identified as Vargas, exited the Infiniti, walked to the CW's vehicle, and entered the front passenger seat of the CW's vehicle.

      ii. A DMV check of the vehicle with New Jersey license plate Y67EPU revealed that it was registered to an individual with the last name of "Vargas."

      iii. At approximately 12:10 p.m., Vargas exited the CW's vehicle and walk back to the Infiniti. Shortly thereafter, the CW pulled in front of Harold's Restaurant, and the CW and Vargas engaged in a short conversation from their vehicles. Following the brief conversation, Vargas departed from the area.

---

[1] The CW previously pleaded guilty to narcotics trafficking and is cooperating with the government in the hope of receiving leniency at sentencing. Information provided by the CW has been corroborated by information provided by other confidential sources and consensual recordings made by the CW.

3

        d.      Shortly thereafter, DEA agents met the CW at a pre-determined location where the CW returned the recording device and the purported sample of cocaine. A laboratory analysis on the sample provided by the CW revealed it to be 0.37 grams of cocaine.

        e.      On December 15, 2014, the CW called Vargas. A draft transcription of an excerpt of their telephone conversation follows:[2]

| | |
|---|---|
| CW: | Yeah I was just calling you back. Aight, so I, yeah I mean he'll take that. He would take that. Definitely. |
| VARGAS: | Aight so I'll bring it to right there and then we can work from there. Cause I mean if he wants the whole thing then, then somehow we work it out, and I got somebody that I know that'll do it. And he'll do it for me. You know what I mean? |
| CW: | I got you. |
| VARGAS: | You know obviously I have to take care of him a little bit but not a lot. |
| CW: | Alright listen, I got you. Ok, I'm going to Brooklyn now. I'll call you when I'm done. And then we'll get together I'll give you the fucking cash, and you'll make the move. |
| VARGAS: | Want me to meet you in Brooklyn? |
| CW: | What? |
| VARGAS: | Want me to meet you in Brooklyn? |
| CW: | Nah, nah, I got fucking shit to do out there. I gotta go all the way out to Sheepshead Bay but uh, I'll call you when I get back. |
| VARGAS: | I could be right there, I could be right there, I could be right there by the bridge. Cause that's where, my man got a uh, uh, a shop, a body shop. |
| CW: | See me for what though? Like what do you want to see me for now? |

---

[2]   All quotations included herein are based on draft transcripts and subject to revision.

4

| | |
|---|---|
| VARGAS: | You said you was gonna which you call it. You said you was gonna give me the bread to go up there. |
| CW: | Yeah, but I didn't know that. You know. You got to give me a couple of hours to put that together. |
| VARGAS: | Alright. |
| CW: | It's not like I know I was seeing you. You know what I mean? So let me go take care of some business first. I'll scrape together three grand. Which you know I mean, I could just grab that from a couple of friends of mine. And then uh, you know I'll give that back to them I got the house, that's not a problem. |
| VARGAS: | I should probably need like twenty-five hundred. I got the rest. |
| CW: | Okay. Okay, so you know, give me fucking. Give me like. Give me like. What's it now like eleven? Give me to like uh two o'clock. I'll talk to you by two. |
| VARGAS: | Aright. Cause I'd rather just meet you up more this way then down there, that's what I'm saying. |
| CW: | Yeah, Yeah. I'll meet you around Staten Island area. You know. And then uh you know, we'll move from there. So give me till two. I'll talk to you around two. Okay. |
| VARGAS: | Alright. |
| CW: | And then I'll give ya the money and then uh, are we going together to make this whole thing happen? |
| VARGAS: | What the um??? |
| CW: | Or do you want me to just give you the money and you go fucking do it? I mean, which way do you want to do it? |
| VARGAS: | Uh, uh, I'll do it cause the thing is I got to run uptown and then I got to run back to Staten Island, cause the guy's in Staten Island that's gonna do it for me. |

      f.    On or about December 16, 2014, the CW called Vargas and told him that he could not meet with Vargas that day, but asked Vargas to meet with another

5

individual instead. Vargas agreed and thereafter an undercover DEA agent (the "UC") posed as the individual the CW was referencing. The UC then arranged to meet Vargas in Manhattan.

     g. On or about December 16, 2014, the UC met with Vargas in front of B&H Photo at 420 9th Avenue, New York, New York. (Prior to meeting him, the UC saw Vargas arrive in the same dark-colored Infiniti in which he arrived at the Edison, New Jersey meeting with the CW.) During the December 16, 2014 meeting, Vargas provided the UC with a white package wrapped in clear tape, which he indicated contained crack-cocaine. A laboratory analysis of the substance contained within the white package revealed it to be 24.2 grams of cocaine base.

    5. Based upon the above proffer, the government requests that the Court issue Orders that provides, pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider to supply within seven days the HISTORICAL CELL-SITE INFORMATION for the period from December 15, 2014 to December 16, 2014.

6. The government also requests that the service provider, and any other person or entity whose assistance is used to facilitate execution of the Orders, be ordered not to disclose (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider; and (c) the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person, unless and until otherwise ordered by the Court. Any such disclosure might endanger the life or physical safety of an individual; cause a target to flee from prosecution; result in the destruction of or tampering with evidence; risk intimidation of potential witnesses; and/or seriously jeopardize the investigation.

7. No prior request for the relief set forth herein has been made except to the extent set forth above. The foregoing is affirmed under the penalties of perjury. *See* 28 U.S.C. § 1746.

Dated: Brooklyn, New York
      May 11, 2015

Elizabeth Geddes
Assistant United States Attorney
718-254-6430

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE RELEASE
OF HISTORICAL CELL-SITE INFORMATION

SEALED ORDER
OF AUTHORIZATION

- - - - - - - - - - - - - - - -X

This matter having come before the Court pursuant to an application by Assistant United States Attorney Elizabeth Geddes, an attorney for the Government as defined by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d), requesting Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days AT&T Wireless (the "service provider") disclose recorded information identifying the base station towers and sectors that received transmissions from 917-743-4591, a telephone issued by the service provider and used by David Vargas, Jr. (the "SUBJECT TELEPHONE"), at the beginning and the end of calls or text message transmissions, and the mobile switching center serving the SUBJECT TELEPHONE during any calls or text message transmissions, for the period from December 15, 2014 to December 16, 2014 (collectively, the "HISTORICAL CELL-SITE INFORMATION");

UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT:

Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the government has offered specific and articulable facts showing that there are reasonable grounds to believe that the HISTORICAL CELL-SITE INFORMATION is relevant and material to an ongoing criminal

investigation into possible violations of federal criminal laws, including narcotics offenses, in violation of 21 U.S.C. §§ 841, 843 and 846, being conducted by the Drug Enforcement Administration (the "investigative agency"); now therefore,

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the service provider shall supply to the investigative agency within seven days the HISTORICAL CELL-SITE INFORMATION for the period from December 15, 2014 to December 16, 2014;

Good cause having been shown, IT IS FURTHER ORDERED, that this Order and the application be sealed until otherwise ordered by the Court, and that the service provider, its representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of this Order, the existence of the Order to Service Provider or the production of the HISTORICAL CELL-SITE INFORMATION to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated: Brooklyn, New York
      May _11_, 2015

                                          S/ Robert M. Levy
                                        THE HONORABLE ROBERT M. LEVY
                                        UNITED STATES MAGISTRATE JUDGE
                                        EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN
ORDER AUTHORIZING THE RELEASE OF
HISTORICAL CELL-SITE INFORMATION

SEALED ORDER TO
SERVICE PROVIDER

- - - - - - - - - - - - - - - -X

WHEREAS this Court has, upon the application of the United States of America, entered an Order pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days AT&T Wireless (the "service provider") disclose recorded information identifying the base station towers and sectors that received transmissions from 917-743-4591, a telephone issued by the service provider (the "SUBJECT TELEPHONE"), at the beginning and the end of calls or text message transmissions, and the mobile switching center serving the SUBJECT TELEPHONE during any calls or text message transmissions, for the period from December 15, 2014 to December 16, 2014 (collectively, the "HISTORICAL CELL-SITE INFORMATION");

NOW, THEREFORE, IT IS HEREBY:

ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the service provider shall supply within seven days the HISTORICAL CELL-SITE INFORMATION for the period from December 15, 2014 to December 16, 2014;

IT IS FURTHER ORDERED that this Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the Drug Enforcement Administration, the service provider and any other person or entity whose assistance is used to execute this Order; and

IT IS FURTHER ORDERED that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction, the existence of the this Order or the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated: Brooklyn, New York
May 11, 2015

S/ Robert M. Levy
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK